UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAMUEL GOODALL,

                          Plaintiff,

        v.

C/O HATCH, C/O K. ADAMS,
SGT. McMAINS, GRIEVANCE
COORDINATOR JEFFREY RUDE,
SUPERINTENDENT MAGGIE
MILLER-STOUT, and
DEPARTMENT OF
CORRECTIONS,

                          Defendants.

CASE NO. 16-cv-5342-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: JUNE 9, 2017

        The District Court has referred this 42 U.S.C. § 1983 civil rights action to United

States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and

(B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4.

In this 42 U.S.C. § 1983 civil rights action, plaintiff inmate alleges that he was subjected to unreasonable use of force while incarcerated. Dkt. 6. Defendants move for summary judgment, arguing that the use of force was reasonable. Dkt. 34.

Despite plaintiff's allegations that he was "attacked" while he was having a seizure and that his ankle was broken, all evidence demonstrates otherwise. Instead, the evidence demonstrates that plaintiff was refusing to follow directions from the correctional officers and was acting in a belligerent fashion. While plaintiff was being escorted through the laundry room, plaintiff began to pull away, and jumped and kicked a laundry cart, then "mule-kicked" backwards with his leg towards a member of the DOC staff. The DOC staff brought plaintiff to the ground in order to bring him under control. At that time, plaintiff appeared to have a seizure. Subsequently, medical records demonstrate that plaintiff was assessed by medical staff with an ankle sprain, he was able to bear weight on the ankle and he demonstrated zero swelling in his ankle. The plan for treatment included a splint for one week. Two weeks later, plaintiff's medical chart indicates that plaintiff stated that his ankle felt better with "0 problem." There is no evidence that he was attacked while he was suffering from a seizure, as the medical report shows that he had redness and some scratches, but otherwise no additional injuries. Plaintiff provides only his unsworn allegation regarding this attack, but also contradictorily alleges that he was unconscious at the time, rendering it impossible for him to know what was occurring while he was seizing.

Plaintiff has failed to submit any admissible evidence calling into question any of these discussed facts. For this reason, as well as the reasons discussed herein, the Court

recommends that defendants' motion for summary judgment be granted, and plaintiff's complaint be dismissed.

## PROCEDURAL HISTORY

Plaintiff, SAMUEL GOODALL, proceeding *pro se* and *in forma pauperis,* filed his complaint in May, 2016. Dkts. 1, 5, 6. Although plaintiff signed three other documents when he initially filed his complaint attached to his motion to proceed *in forma pauperis*, plaintiff's complaint is unsigned. Dkt. 6. Defendants served plaintiff with a *Rand* notice and copies of the motion for summary judgment and supporting documentation on March 3, 2017. *See* Dkts. 34-44. Plaintiff filed a response to defendants' motion for summary judgment on March 10, 2017. Dkt. 47. Defendants filed their reply on March 31, 2017. Dkt. 50.

## FACTS

The Court provides a factual summary based substantially on defendants' statement of facts. *See* Motion for Summary Judgment, Dkt. 34, pp. 2-7. As discussed further below, plaintiff presents no admissible evidence to contradict defendants' factual assertions. However, the Court subsequently will discuss the apparent differences in factual contentions evidenced by plaintiff's unsigned complaint and his response to defendants' motion. *See* Dkts. 6, 47.

Plaintiff, SAMUEL GOODALL, formerly was an offender in Department of Corrections ("DOC") custody, and on January 14, 2015, plaintiff was housed at Airway Heights Corrections Center ("AHCC"), a DOC facility. Complaint, Dkt. 6, at pp. 2-3. On January 14, 2015, "priority traffic" was initiated at AHCC and a "cell in" was announced,

meaning that the prisoners were directed to enter into and remain in their cells.

Declaration of Defendant Adams, Dkt. 35, ¶ 3. Defendant Adams noticed that plaintiff

was "slow-walking" his way to the stairs, and asked him why "he is always the last one to

'cell in.'" *Id*. Plaintiff reportedly yelled at defendant Adams to shut her mouth, and

defendant Adams gave plaintiff "a directive to stand for search and he refused." *Id*. When

plaintiff slowly walked to his cell, defendant Adams "then went to [plaintiff's] cell with

C/O [Corrections Officer] Rodney Hatch and directed him to stand for search." *Id*.

Plaintiff continued to refuse directions to stand for search. *Id*. According to defendant

Adams' declaration, "Priority traffic was initiated and [plaintiff] continued to walk down

the stairs ignoring all staff directives." *Id*. Once plaintiff arrived at the bottom of the

stairs, he "complied with orders to cuff up." *Id*.

When staff members began escorting him to the unit holding cell, as they entered

the laundry room, C/O Hatch observed plaintiff "strike out with his right leg and kick a

laundry cart with enough force to make both C/O Derek Reeves CC2 [Classification

Counselor 2] Greg Hopkins, [who were scoring plaintiff,] stumble." *Id*.; Declaration of

Rodney Hatch, Dkt. 36, ¶¶ 3-4. According to the declaration of defendant Hatch, plaintiff

"then began to aggressively resist the escort and 'mule kicked' backward at CC2 Garber,

who was behind [plaintiff]." *Id*. at ¶ 4. Defendant Hatch reportedly heard defendant Sgt.

Denise McMains say 'take him to the ground,' [and] [defendant Hatch] immediately

stepped in and placed [his] left hand on the back of [plaintiff's] neck/upper shoulder area

and pulled to redirect [plaintiff] away from some nearby shelving as he was taken to the

floor." *Id.* at ¶ 4. Defendant Hatch "then placed [his] right forearm across [plaintiff's]

lower back and applied pressure to assist taking [plaintiff] to the floor." *Id.* According to defendant Hatch, plaintiff "continued to resist throughout the entire process." *Id.*

According to defendant Hatch, once plaintiff "was on the ground and under control he appeared to be having difficulty breathing and began to shake as if having a seizure." *Id.* at ¶ 5. Staff members assisted plaintiff "to a sitting position, leaning forward to ensure a clear airway," and medical staff were called. *Id.* According to defendant Hatch, in contrast to the allegation in plaintiff's complaint regarding defendant Hatch breaking his ankle during the use of force incident, defendant Hatch "was not near his ankles but rather had placed [his] left hand on [plaintiff's] neck/upper shoulder area and [his] right hand on his lower back." *Id.* at ¶ 6. According to the Declaration of CC2 Jeremy Garberg, Garberg was following the group into the laundry room when plaintiff "kicked the laundry carts and began pulling from side to side." Dkt. 39, ¶ 4. It was at this time that plaintiff "kicked backward in [Garberg's] direction [and Garberg] placed both of [his] hands on [plaintiff's] left ankle taking control of the left leg while he was guided to the ground." *Id.* at ¶ 4. During the incident, Garberg "sustained injuries to [his] knee and thumb." *Id.* at ¶ 6.

These allegations regarding the factual circumstances surrounding the use of force incident are substantiated by the Declaration of CC2 Greg Hopkins in his sworn declaration, who was escorting plaintiff to the laundry room area and "had control of his right arm." Dkt. 37 at ¶¶ 3-5. When staff brought plaintiff to the ground, CC2 Hopkins "had [his] right hand on [plaintiff's] right shoulder and [his] left hand on his right hand." *Id.* at ¶ 4. According to the Declaration of CC2 Hopkins, during this use of force incident,

Hopkins sustained injuries to his lower back and knees, as well as cuts on his left hand. *Id*. at ¶ 6.

Defendant CC2 McMains corroborates these reports of the incident, noting that she heard an emergency traffic call over the radio regarding "an offender refusing to disperse, and responded to find [plaintiff] being placed in restraints." Dkt. 40, ¶ 4. Defendant CC2 McMains indicates in her declaration under penalty of perjury that plaintiff "was being escorted to the back holding cell when he became combative [and she] gave the order to place the offender on the ground." *Id*.

After the use of force incident, plaintiff was given a medical assessment by Justin Sassone, PA-C and C. Bouscher, RN. *See* Dkt. 34, p. 6; *see also* Declaration of Justin Sassone, PA-C, Dkt. 42, ¶¶ 4-6; Attachment A. According to the Primary Encounter Report ("PER"), signed by Justin Sassone, PA-C, plaintiff was known to have sub-optimal control seizures, having breakthrough seizures with stress triggers, and apparently had suffered a tonic/clonic seizure for a total of 10 seconds. Declaration of Justin Sassone, PA-C, Dkt. 42, ¶ 5; Attachment B. Plaintiff reported to be alert and oriented to person, place, and time by nurse-responders prior to arrival to the triage/trauma room. *Id.* at ¶ 5; Attachment B. Also at this time, plaintiff reportedly complained of headache and left ankle pain, but demonstrated full range of motion in the left ankle. *Id.* at ¶ 5; Attachment B. The PER also indicates that plaintiff reported a history of left ankle fracture, and exhibited a general "fair-to-well appearance, no acute distress, ankle: able to bear [weight], [zero] swelling, [tender to palpation] [at] left ankle medial malleolus; x-ray: preliminary: older-appearing fracture. Zero swelling." *Id.* at ¶ 5;

Attachment B. Plaintiff was assessed with an ankle sprain, and the plan for treatment of such was a splint for one week. *Id.* According to another primary encounter report, plaintiff was prescribed acetaminophen for head pain at the time. *Id.* at ¶ 7; Attachment D. Two weeks later, on January 28, 2015, "RN Bouscher saw [plaintiff] for a follow-up visit and made a PER chart note about the visit," noting that the foot splint was retrieved and that plaintiff stated "it feels better ([left] ankle), 0 problem." *Id.* at ¶ 8; Attachment C.

Following the use of force, Correctional Unit Supervisor David Window submitted a Use of Force Report, which was reviewed and signed by Correctional Capt. Barbara Arnett on February 5, 2015, and then reviewed and signed by then-Associate Superintendent James Key on February 9, 2015. Declaration of Barbara Arnett, Dkt. 43, ¶ 3; Attachment A. The Use of Force Report indicates that Window, Arnett, and Key each checked a box indicating: "I have reviewed the actions of the employees involved and find that they have acted in accordance with all Department policies." *Id.* at ¶ 3; Attachment A at p. 6-8.

## STANDARD OF REVIEW

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the material facts before the court and the moving party is entitled to judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). The moving party is entitled to summary judgment if the evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To determine if summary judgment is appropriate, the court must consider

whether particular facts are material and whether there is a genuine dispute as to the material facts left to be resolved. Fed. R. Civ. P. 56(c). The materiality of a given fact is determined by the required elements of the substantive law under which the claims are brought. *Anderson*, 477 U.S. at 248. Factual disputes that do not affect the outcome of the suit under the governing law will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden"). However, when presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro se complaint will be liberally construed  . . . ." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted). With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issues raised in this motion. *See Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991).

Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The opposing party cannot rest solely on his pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery

material that would allow a reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249-50. In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). However, weighing of evidence and drawing legitimate inferences from facts are jury functions, and not the function of the court. *See United Steel Workers of America v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

## DISCUSSION

In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Defendants do not dispute that they were acting under color of state law.

### I.     "Persons" under § 1983

Defendants first contend that defendant DOC and the individual defendants in their "official capacities" are not "persons" under § 1983, and that therefore plaintiff's § 1983 claims against them for damages must be dismissed. Dkt. 34, p. 9. Plaintiff does not respond to this argument. Dkt. 47. The Court finds it persuasive.

Although a plaintiff can maintain a § 1983 claim against a person acting under color of state law, *see Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986), neither a state, nor a state agency that

is an arm of the state, is a "person" for purposes of § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990) (*citing Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)).  This rationale applies to state agencies such as the Washington Department of Corrections ("WDOC"). *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam); *Allee v. Or. Dep't. of Corr.*, 315 Fed. Appx. 610, 611 (9th Cir. 2009) (unpublished memorandum opinion) (*citing Will, supra*, 491 U.S. at 66). Similarly, regarding requests for damages, "officials acting in their official capacities are [not] 'persons' under § 1983." *Will*, 491 U.S. at 71.

Plaintiff does not respond to defendants' argument that defendant DOC and all of the individual defendants acting in their "official capacities" are not "persons" under § 1983, and that therefore plaintiff's § 1983 claims against them for damages must be dismissed. Dkt. 34, p. 9; Dkt. 47. Defendants' argument is persuasive and substantiated by case law. Therefore, defendants' motion for summary judgment regarding defendant DOC should be granted; and defendants' motion for summary judgment regarding all claims for damages against individual defendants for actions taken in their "official capacities" also should be granted.

## II.    Personal participation

Defendants also contend that remaining claims against defendants Rude and Miller-Stout "must be dismissed because plaintiff has failed to allege any facts showing that these defendants personally participated in violating his constitutional rights." Dkt. 34, p. 10. Again, plaintiff does not respond to this argument by defendants. *See* Dkt. 47.

With respect to causation, in order to state a claim against a defendant under 42 U.S.C. § 1983, a plaintiff must plead facts that sufficiently allege that the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976).

In this matter, plaintiff has failed to present any factual allegation against either defendant Rude or defendant Miller-Stout. *See* Dkt. 6, p. 3. Although defendant Miller-Stout reviewed the Use of Force Assessment submitted after the use of force had occurred, plaintiff does not explain how or present any facts suggesting that defendant Miller-Stout "either committed a constitutional violation or noticed and failed to correct a previous violation of plaintiff's constitutional rights." Dkt. 34, p. 11 (citing Dkt. 6; Arnett Declaration, Dkt. 43, pp. 10-13). Similarly, although defendant Rude apparently was involved with processing plaintiff's grievances, plaintiff does not explain how or present any facts suggesting that defendant Rude violated plaintiff's constitutional rights and, as noted by defendants, "appears to be making the argument that he exhausted the grievance

process  .  .  .  ." *Id.* at 11-12. As noted by defendants, defendants are not raising the failure to exhaust defense and plaintiff "has not shown that Rude personally participated in violating plaintiff's constitutional rights." *Id.* at 12.

As noted, plaintiff does not dispute defendants' contention that no factual allegations have been alleged against these defendants, and does not dispute defendants' argument that claims against these defendants should be dismissed.

Due to lack of alleged personal participation, defendants' motion for summary judgment regarding defendants Rude and Miller-Stout should be granted.

### III.    Allegations that Defendants used Excessive Force

Defendants argue that plaintiff's Eighth Amendment claims against defendants Adams, Hatch, and McMains regarding excessive force fail as a matter of law. Dkt. 34, pp. 12-18.

The threshold inquiry for a claim of use of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6, 7 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). As prison officials generally will not have time to reflect on the nature of their actions when acting in response to an immediate disciplinary need, this standard is applied as opposed to the "deliberate indifference" standard. *See Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The Court should consider the following factors when determining whether force was excessive: (1) the need for application of force; (2) the extent of injury; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers;

and (5) efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321). Because the use of force relates to the prison officials' legitimate interest in maintaining security and order, the Court must be deferential when reviewing the necessity of using force. *See Whitley*, 475 U.S. at 321-22.

Regarding the first factor, the need for application of force, defendants contend that the use of force was necessary because of plaintiff's behavior towards the staff. *See* Dkt. 34, pp. 13-14. Plaintiff does not dispute any of the factual contentions by defendants regarding plaintiff's refusal to follow directives from the staff or regarding plaintiff's combativeness. *See* Plaintiff's Response, Dkt. 47; *see also* Dkt. 6 (unsigned complaint). In addition, plaintiff does not dispute that while passing through the laundry room, he was moving from side to side, and kicked the laundry cart causing to correctional officers escorting him to lose their balance and does not dispute that he "mule-kicked" towards a DOC staff member. *See id; see also* Dkt. 34, p. 14 (citing Hopkins Declaration, Dkt. 37, ¶ 4; Reeves Declaration, Dkt. 38, ¶ 3; Hatch Declaration, Dkt. 36, ¶ 4). As discussed more fully below, based on the undisputed facts, the Court concludes the use of force was necessary and that this factor weighs in defendants' favor. *See Hudson*, 503 U.S. at 7.

There are only two potential factual disputes: plaintiff alleges in his complaint that after the use of force was initiated, and he began having a seizure, that defendant Hatch assaulted him while he was having a seizure and that defendant Hatch broke his ankle. *See* Dkt. 6, p. 3. However, plaintiff's complaint is not signed and cannot be considered evidence. Furthermore, according to the Supreme Court, as the party opposing summary judgment, plaintiff cannot rest solely on his pleadings but must produce significant,

probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 n.11 (1986); *Anderson*, 477 U.S. at 249-50.

Plaintiff has attached his grievances or offender complaints filed with the DOC, which contain his allegations regarding being beaten while he "was unconscious having a grand mal seizure while in handcuffs." *See, e.g.*, Dkt. 47, p. 5. However, none of these documents are signed under penalty of perjury, and plaintiff has not submitted any declaration or affidavit regarding his factual allegations. *See, generally*, Dkts. 6, 47. Furthermore, even if they were signed under penalty of perjury, plaintiff contends that at the time, he "was unconscious;" therefore he cannot have firsthand knowledge of what was occurring while he was unconscious. *See, e.g.*, Dkt. 47, pp. 2, 5. Although plaintiff submits a witness statement (which is not signed under penalty of perjury), nothing in this statement supports plaintiff's allegations, but instead, supports defendants' factual contentions. *See id.* at pp. 3-4. For example, the witness, apparently another prisoner, indicated that "custody officers issued directives to [plaintiff] for his slow to comply matter," and opines that "custody officers responded by adjusting their verbal orders and physical positions in accordance to [plaintiff's] actions and behaviors." *Id.*

Defendants' (Rand) notice to plaintiff filed contemporaneously with their motion for summary judgment informs plaintiff that his response to their motion "must consist of (1) a brief opposing the motion, not to exceed 24 pages in length, and (2) evidence supporting your claims, such as admissions from the other party, affidavits, declarations, deposition transcripts, or answers to interrogatories that contradict or oppose the moving

party's motion and support your claims." Dkt. 44, p. 1 (citing Fed. R. Civ. P. 56, Local Rules 7(b)-7(e)). It further indicates that any "affidavits or declarations submitted must be signed under penalty of perjury." *Id.* Finally, the notice supplied to plaintiff by defendants indicates that if "the party you are suing meets its burden under Rule 56 by submitting affidavits or other sworn testimony, <u>you cannot rely only on what your complaint says</u>," further indicating that instead, plaintiff "must provide specific facts using the type of evidence set forth above." *Id.* at 2.

Plaintiff has not submitted any significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in his favor. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586 n.11; *Anderson*, 477 U.S. at 249-50. Furthermore, what plaintiff has submitted in response to defendants' motion does not demonstrate that there are disputed issues of relevant fact. The only fact that plaintiff appears to contest in his unsigned submissions in response to defendants' motion is whether he was assaulted while he "was unconscious having a grand mal seizure while in handcuffs." Dkt. 47, p. 5. However, he has not presented this factual assertion in any document signed under penalty of perjury, and furthermore he could not have firsthand knowledge of what was occurring while he "was unconscious." *Id.*

Similarly, plaintiff presents no evidence that defendants broke his ankle, as indicated in his (unsigned) complaint (but unmentioned in his response to defendants' motion). As discussed further below in the discussion on the extent of injury, the medical record demonstrates that he suffered from an ankle sprain that resulted in zero swelling at the time, with him able to bear weight on it, and that within two weeks was causing him

"0 problem." Declaration of Justin Sassone, PA-C, Dkt. 42, ¶¶ 5, 8; Attachment B and C (Primary Encounter Reports). Nowhere does plaintiff dispute that he was failing to follow directives, nor does he dispute that he was acting in a combative fashion, pulling from side to side and kicking backwards while being escorted. The Court concludes that the undisputed facts demonstrate that there was a need for the application of force.

Regarding the third factor of the relationship between the need for force and the amount of force used, plaintiff has not supplied any admissible evidence that defendants sought to harm plaintiff or engaged in any force beyond that which was necessary to control plaintiff's behavior. As noted, plaintiff has not disputed defendants' assertions regarding his failure to comply with directives and his combativeness. In addition, plaintiff has not disputed with admissible evidence the amount of force used. These factual contentions regarding plaintiff's behavior also are relevant with respect to the fourth factor, that is, the nature of the threat reasonably perceived by prison officers. Plaintiff does not dispute that he was moving from side to side, or that he kicked towards a staff member. These actions, that are undisputed, support defendants' contention that the prison officers reasonably perceived a threat to themselves. The third and fourth factors weigh in favor of defendants.

Similarly, regarding efforts made to temper the severity of a forceful response (fifth factor), defendants' contention that the amount of force used was proportional to the need for force, making it unnecessary for more severe force to be applied, is persuasive. Defendants furthermore contend that "Defendant Hatch placed his left hand on Plaintiff's neck/upper shoulder area *in order to redirect Plaintiff away from some*

*nearby shelving."* Dkt. 34, p. 15 (citing Hatch Declaration, Dkt. 36, ¶ 4). Defendants

contend that this fact, undisputed by plaintiff, demonstrates that defendants made efforts

to temper the severity of a forceful response. They also contend that "staff members

simply sought to control plaintiff's movement as he was brought to the ground," and they

"did not kick, punch, pepper spray, are otherwise affirmatively seek to harm plaintiff."

Dkt. 34, p. 14. The only allegation by plaintiff inconsistent with this contention is

plaintiff's allegation in his unsigned complaint that he was assaulted while unconscious,

which he could not have any firsthand knowledge of, and for which he supplies no

admissible evidence in support.

      Finally, regarding the extent of his injuries, although plaintiff alleges in his

unsigned complaint that his ankle was broken, the admissible evidence on file contradicts

this allegation. For example, shortly after the use of force incident, plaintiff reportedly

complained of headache and left ankle pain, but demonstrated full range of motion in the

left ankle. Declaration of Justin Sassone, PA-C, Dkt. 42, ¶ 5; Attachment B. The primary

encounter report also indicates that plaintiff exhibited a general "fair-to-well appearance,

no acute distress, ankle: able to bear [weight], [with] zero swelling." *Id.* at ¶ 5;

Attachment B. Plaintiff was assessed with an ankle sprain, and the plan for treatment of

such was a splint for one week. *Id.* Two weeks later, on January 28, 2015, "RN Bouscher

saw [plaintiff] for a follow-up visit and made a PER chart note about the visit," noting

that plaintiff stated "it feels better ([left] ankle), 0 problem." *Id.* at ¶ 8; Attachment C. The

record also reflects that plaintiff had some redness and scratches, but plaintiff does not

allege, and no evidence in the record demonstrates, that any of these injuries were

serious. Plaintiff was prescribed acetaminophen for his headache, and a splint for a week, and apparently never suffered from any swelling in his ankle. *See id.* at ¶ 8. This factor regarding extent of injury also favors defendants.

As noted by defendants, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." Dkt. 34, p. 17 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). As noted by the Supreme Court, "as we have emphasized, 'when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (quoting *Matsushita Elec. Industrial Co.*, 475 U.S. at 574).

Plaintiff's allegations of a broken ankle and being attacked while unconscious are blatantly contradicted by the record. Furthermore, the only support for these allegations consist of plaintiff's statements in documents that are not signed under penalty of perjury. Finally, plaintiff's allegation that he has knowledge of being attacked while unconscious is unreasonable and self-contradictory.

For the reasons stated, the Court concludes that there is no *genuine* issue of material fact regarding plaintiff's allegations of use of excessive force. Defendants' motion for summary judgment should be granted on this claim.

**IV.    Claim that defendants conspired against plaintiff**

Plaintiff alleges in a conclusory fashion that DOC staff "conspired to hide evidence of the assault [against him]." Dkt. 6, p. 3. Defendants contend that plaintiff's general claim of a conspiracy is factually unsupported and must be dismissed. Dkt. 34, pp. 18-19. Plaintiff does not respond to this argument. Dkt. 47.

As described by the Ninth Circuit, "Section 1985 proscribes conspiracies to interfere with certain civil rights." *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 626 (9th Cir. 1988). As noted by the Ninth Circuit, it is insufficient to support a Section 1985 claim with a "mere allegation of conspiracy without factual specificity." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)) (conclusory allegations are insufficient and a plaintiff must state facts sufficient "to state a claim that is plausible on its face").

The only allegation in plaintiff's complaint that arguably could support his claim that defendants conspired against him is the allegation that "per policy, all attendant staff and officers must write an incident report [and] almost all refused (or were directed not to [write one])." Dkt. 6, p. 3. However, defendants have submitted declarations and written reports demonstrating that this allegation is incorrect, and plaintiff has filed nothing to refute these declarations and reports. The record substantiates defendants' contention that "[r]eports *were* submitted by all employees listed as directly involved with the use of force-Defendant Hatch, Garberg, Hopkins, Reeves, and Defendant McMains." Dkt. 34, p. 19 (citing Arnett Declaration, Dkt. 43, ¶¶ 3-4; Hatch Declaration, Dkt. 36, ¶ 7, Attachments A (Incident Report dated 1/14/15) and B (Use of Force Report dated

1/14/15); Garberg Declaration, Dkt. 39, ¶ 7, Attachment A (Use of Force Report dated 1/14/15); Hopkins Declaration, Dkt. 37, ¶ 7, Attachment A (Use of Force Report dated 1/14/15); Reeves Declaration, Dkt. 38, ¶ 4, Attachment A (Use of Force Report dated 1/14/15); McMains Declaration, Dkt. 40, ¶ 6,  Attachment A (Incident Report dated 1/14/15)). Defendants' argument is persuasive.

For the reasons stated, and based on the record as well as the lack of evidence suggesting otherwise, the Court concludes that plaintiff has provided no facts to support his claim that defendants conspired against him. Defendants' motion for summary judgment should be granted as to this claim that defendants conspired against him.

## V.    State law claims pursuant to Washington Public Records Act

Plaintiff alleges that he was denied access to a video of the use of force incident. Defendants contend that plaintiff's subsequent request for a video of the incident does not stem from the same set of operative facts as his federal claims, as it instead arises out of a later public records request. Dkt. 34, p. 20; *see also* Dkt. 6, p. 3.

A federal district court's jurisdiction over § 1983 claims is based on the "federal question statute, 28 U.S.C. § 1331, which grants federal district courts original jurisdiction over cases 'arising under the Constitution, laws, or treaties of the United States.'" *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1250 (7th Cir. 1994) (*quoting* 28 U.S.C. § 1331). The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), "extends the jurisdiction of federal district courts to all claims that are sufficiently related to the claim or claims on which their original jurisdiction is based to be part of the same

case or controversy within the meaning of Article III of the Constitution." *Wright*, 29 F.3d at 1250 (*quoting* 28 U.S.C. § 1376(a)). This allows the federal district court to extend its jurisdiction to encompass state law claims "sufficiently related" to the federal claim or claims. *Id*. The "supplemental jurisdiction statute codified judge-made principles of pendent jurisdiction, [which] is a doctrine of discretion." *Id*. (citations omitted). "[A] district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendant state-law claims." *Id. (citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). As noted by the Ninth Circuit, the "Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs*., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *Carnegie-Melon*, 484 U.S. at 350 n.7).

The Court finds persuasive defendants' argument that it "does not appear that any of the individual defendants in this case had any involvement in plaintiff's subsequent public records request to DOC's public disclosure office." Dkt. 34 (citing Dkt. 6, p. 3 ("the DOC public disclosure officer claims there was no such records")). Fairness and judicial economy are not served by exercising supplemental jurisdiction. The Court also notes defendants' argument that "whether DOC violated the Public Records Act in responding to plaintiff's public records request will depend on an application of state law." *Id*. (citing Wash. Rev. Code §§ 42.56.550, .565). The factor of comity also weighs towards the Court declining to exercise supplemental jurisdiction.

The Court finds persuasive defendants' argument that "any state law claim plaintiff may have under the Public Records Act is not related enough to plaintiff's federal claims to warrant an exercise of supplemental jurisdiction over the state claims in this case." *Id*. Furthermore, because the Court herein recommends that defendants' motion for summary judgment be granted as to all of plaintiff's federal law claims, this further buttresses the conclusion that the balance of factors points towards declining to exercise jurisdiction over any remaining state law claims. *See Acri,* 114 F.3d at 1001 (quoting *Carnegie-Melon*, 484 U.S. at 350 n.7).

## CONCLUSION

1) Defendants' motion for summary judgment regarding defendant DOC should be granted; and defendants' motion for summary judgment regarding all claims for damages against individual defendants in their "official capacities" also should be granted as these parties are not "persons" under § 1983. These claims should be dismissed with prejudice.

2) Due to lack of alleged personal participation, defendants' motion for summary judgment regarding defendants Rude and Miller-Stout should be granted.

3) Because plaintiff has failed to refute defendants' arguments and evidence demonstrating that the use of force was not excessive, defendants' motion for summary judgment regarding plaintiff's claim that excessive force was used against him should be granted.

4) Based on a complete lack of factual support, defendants' motion for summary judgment regarding plaintiff's claim that defendants conspired against him should be granted.

5) The Court should decline to extend supplemental jurisdiction over plaintiff's unrelated state law claims pursuant to the Washington Public Records Act. These claims should be dismissed without prejudice.

6) Defendants' motion for summary judgment should be granted and plaintiff's complaint should be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 9, 2017**, as noted in the caption.

Dated this 18th day of May, 2017.

J. Richard Creatura
United States Magistrate Judge